UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:20-CR-007-PPS-JEM |
| | ) | |
| LORENZO JOHNSON | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

COMES NOW the United States of America, by its counsel, Clifford D. Johnson, United States Attorney for the Northern District of Indiana, through Eduardo Palomo, Trial Attorney, and Molly A. Kelley, Assistant United States Attorney, and submits its sentencing memorandum recommending that this Court sentence defendant Lorenzo Johnson to 50 years imprisonment followed by lifetime supervised release.

**I.     INTRODUCTION**

On August 16, 2021, a jury convicted defendant after a four-day trial of three counts of conspiracy to produce child pornography in violation of 18 U.S.C. § 2251(a), one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of being a felon in possession of a weapon in violation of 18 U.S.C. § 922(g)(1).

Defendant's criminal history includes a 2008 felony conviction in Cook County Circuit Court for aggravated sexual abuse involving a minor victim. Presentence Report ("PSR") ¶71.  Defendant committed the instant offenses while required to register as a sex offender.

1

Because of defendant's prior conviction relating to aggravated sexual abuse involving a minor, the minimum term of imprisonment for Counts One, Two, and Three (conspiracy to produce child pornography) is 25 years and the maximum term is 50 years per count. 18 U.S.C. § 2251(e); *United States v. Loyd*, 886 F.3d 686, 688 (8th Cir. 2018) (the 25-year minimum sentence applies where defendant's prior conviction "'relat[es] to' one of the enumerated types of misconduct" identified in § 2251(e); the sentencing court need not "assess whether a particular statute within the listed chapters and sections is categorically related to one of the listed forms of misconduct."). Similarly, the minimum term of imprisonment for Count Six (distribution of child pornography) is 15 years and the maximum term is 40 years. 18 U.S.C. § 2252(b)(2). The maximum term of imprisonment for Count Seven (felon in possession of a weapon) is 10 years. 18 U.S.C. § 924(a)(2). Pursuant to 18 U.S.C. § 3583(k), the Court shall impose a term of supervised release of five years to life.

Defendant's total offense level under the Sentencing Guidelines is 55 and his criminal history category is I,[1] resulting in an advisory range of life imprisonment. Because the statutory maximum penalty is less than the Sentencing Guidelines' advisory term of life imprisonment, the Guidelines advisory term of imprisonment is the statutory maximum for each count. No circumstances justify variance or departure from the Guidelines' advisory term. The Court should accordingly sentence defendant to 50 years imprisonment followed by lifetime supervised release.

---

[1] Defendant's non-custodial sentence for his prior conviction of aggravated sexual abuse was over ten years before the instant offenses and accordingly does not add any criminal history pursuant to U.S.S.G. § 4A1.2(e)(2).

2

## II. FACTUAL BACKGROUND

Between July and December 2019, defendant engaged in a pattern of calculated criminal conduct where he persuaded and coerced vulnerable women to sexually exploit infants and young children. Defendant used fake Facebook accounts for "Ashley Campbell" and "Ashley Gauler" to hold himself out as a sexually adventurous woman so that he could find and communicate with female Facebook users, including the co-conspirators named in the indictment, Kelsie Gauler, Jasmine Stanley, and Dominique Harper; as well as a fourth woman, Brenda Banks. PSR ¶¶ 5, 28. Defendant began these conversations by asking whether each woman was interested in making money. Defendant quickly steered these conversations towards sexual topics and sent images depicting a nude adult woman and an image of an erect penis.

Next, defendant asked whether his co-conspirators had children or had access to children. Defendant informed his co-conspirators that they could make money by sending him images depicting the genitals of infants and prepubescent children. In defendant's words, "it was like, 'you got a kid? Send me a picture.'" PSR ¶24. Defendant sent his co-conspirators images of prepubescent children engaged in sexually explicit conduct as a means of lowering their inhibitions and to demonstrate the types of images he wanted. Defendant also sent sexually explicit messages to his co-conspirators, once telling Dominique Harper "do you think your [infant] son will have a big dick?" and "are you gonna jag it off or suck it." PSR ¶10.

Defendant succeeding in persuading his co-conspirators to send images of prepubescent children engaged in sexually explicit conduct in exchange for money. After exchanging messages with defendant about her financial difficulties, Kelsie Gauler sent defendant images depicting the genitals of a six-year-old child and a four-year-old child, including images where she manipulated their genitals to make them more visible for the camera. PSR ¶10. After telling defendant about how she was experiencing homelessness and needed money to find a place to sleep, Jasmine Stanley sent defendant images depicting the genitals of a 9-month-old child and sent defendant additional images after defendant instructed her to open the child's vulva with her fingers. PSR ¶10. After defendant told her she could make money by producing images depicting the sexual abuse of children, Dominique Harper sent defendant an image depicting the genitals of a two-year old child. PSR ¶10. Defendant never paid his co-conspirators the money he promised.

Defendant came to the attention of law enforcement after he used the "Ashley Campbell" account in an attempt to coerce a fourth woman, Neci Taylor, to send images of children engaged in sexually explicit conduct. Ms. Taylor reported these communications to law enforcement in Cook County and allowed a detective to use her Facebook account to investigate "Ashley Campbell." PSR ¶4. Investigators learned that defendant's IP address was associated with the "Ashley Campbell" Facebook activity and obtained a warrant to search defendant's residence.

During the search of defendant's residence, investigators seized more than 30 cell phones and a firearm belonging to defendant. PSR ¶27, 30. One of defendant's

4

cell phones contained the images of John Does 1 and 2, Jane Doe 1, and John Doe 3 produced at his request by Kelsie Gauler, Jasmine Stanley, and Dominique Harper, respectively. After the search of his residence, defendant gave an interview to FBI agents and stated that he used the "Ashley Campbell" Facebook account to persuade Dominique Harper to send a picture of an infant's penis. PSR ¶24. He also stated that he sent images of minors engaged in sexually explicit conduct to Neci Taylor. PSR ¶25. Defendant confirmed that "the only reason that [he] asked [Dominique Harper] for her to send nude photos of her kid is so [he] could have something to hold over her head."

Forensic examination of defendant's phone showed that he operated the "Ashley Campbell" account to conspire to with Kelsie Gauler, Jasmine Stanley, and Dominique Harper to produce images of minors engaged in sexually explicit conduct. PSR ¶17-23. Jasmine Stanley[2] and Dominique Harper[3] were charged in the Northern District of Illinois for their involvement in these crimes. Dominique Harper pleaded guilty to one count of transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1) and is awaiting sentencing. Jasmine Stanley is scheduled to plead guilty on December 21, 2021. Kelsie Gauler was charged with production of child pornography and distribution of child pornography in Counts Four and Five of the indictment in this case. Kelsie Gauler committed suicide before trial.

---

[2] *United States v. Jasmine Stanley*, No. 1:19-cr-00928 (N. D. Ill).

[3] *United States v. Dominique Harper*, No. 1:19-cr-00955 (N. D. Ill.).

Defendant engaged in this conduct after having been convicted of a felony for aggravated sexual abuse of a minor in 2008. While employed at a local high school, defendant sexually assaulted a minor student by engaging in sexual intercourse with her after she told him to "stop." PSR ¶71. Defendant pleaded guilty to a felony for violating 720 Ill. Comp. Stat. 5/12-16(f) (2002)[4] and was sentenced to two years' probation.

## III. THE SENTENCING GUIDELINES

The PSR correctly calculates defendant's total offense level of 43.[5] The specific offense characteristics for each count of conviction are readily supported by evidence adduced at trial. Indeed, each specific offense characteristic identified in the PSR was central to defendant's crimes. Nevertheless, defendant objected to application of enhancements for knowingly engaging in distribution under U.S.S.G. § 2G2.1(b)(3) and misrepresenting his identity under U.S.S.G. § 2G2.1(b)(6). "A defendant cannot show that a PSR is inaccurate by simply denying the PSR's truth." *United States v. Mustread*, 42 F.3d 1097, 1102 (7th Cir. 1994). Defendant claims that "he was not the person using the Ashley Campbell and Ashley Gauler accounts in order to gather child pornography" and offers no factual support for his objections. Dkt. #110. The Court should accordingly apply the specific offense characteristics specified in the PSR.

---

[4] Now renumbered without material modification at 720 Ill. Comp. Stat. 5/11-1.60(f) (2015).

[5] Defendant's total offense level is 55. The PSR reduced defendant's total offense level to 43 in accordance with U.S.S.G. Chapter 5, n. 2 which states "[i]n rare cases, a total offense level of less than 1 or more than 43 may result from application of the guidelines. […] An offense level of more than 43 is to be treated as an offense level of 43."

6

The Court should also apply a five-point increase pursuant to U.S.S.G. § 4B1.5(b) because defendant is a repeat and dangerous sex offender against minors. In addition to the instant offenses of conspiring to sexually exploit four prepubescent children, defendant's history includes a conviction for the aggravated sexual abuse of a child in 2008. Defendant's pattern of activity involving prohibited sexual conduct spans over a decade and demonstrates that he is a continuing danger to the public.

This five-level enhancement applies where the "defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies,[6] and the defendant engaged in a pattern of activity involving prohibited sexual conduct[.]" U.S.S.G. § 4B1.5(b). A "covered sex crime" includes offenses under Chapter 110 of Title 18, United States Code. U.S.S.G. § 4B1.5(b) app. n. 2. Counts One, Two, and Three are violations under Chapter 110 of Title 18 involving four separate victims, photographed numerous times at Defendant's request. Accordingly, these qualify as predicate convictions under U.S.S.G. § 4B1.5(b) app. n. 4(b) (defining "pattern of activity" as "at least two separate occasions" of "prohibited sexual conduct

---

[6] The career offender provisions of U.S.S.G. § 4B1.1 do not apply to defendant. Also, U.S.S.G. § 4B1.5(a) does not apply because defendant's prior conviction is not a qualifying conviction under subsection (a). The text of the Illinois statute defendant violated prohibits "an act of sexual conduct with a victim who is at least 13 years of age but under 18 years of age and the person is 17 years of age or over[.]" 720 Ill. Comp. Stat. 5/12-16(f) (2002). The Court must "employ a 'formal categorical approach' to determine whether a prior conviction qualifies as a defined sex offense conviction [under § 4B1.5(a)]. The categorical approach requires that the sentencing court 'look only to the fact of conviction and the statutory definition of the prior offense.'" *United States v. Pierson*, 544 F.3d 933 (8th Cir. 2008). The text of the statute for defendant's prior conviction does not consist of "conduct that would have been an offense under a chapter referred to in subparagraph (A) if the conduct had occurred within the special maritime and territorial jurisdiction of the United States." *See* 18 U.S.C. § 2426(b) (defining qualifying offenses); *see also* 18 U.S.C. § 2243 (prohibiting engaging "in a sexual act with another person who [] has attained the age of 12 years but has not attained the age of 16 years"); U.S.S.G. § 4B1.5 app. n. 3(A)(ii).

7

with a minor."). *See also United States v. Von Loh*, 417 F.3d 710, 715 (7th Cir. 2005) ("the repeat sex offender enhancement be imposed in addition to calculations made pursuant to §§ 2A3.2 and 3D1.4.").

Moreover, this enhancement is "intended to aggressively target recidivist exploiters of minors." *United States v. Phillips*, 431 F.3d 86, 93 (2d Cir. 2005). The U.S. Sentencing Commission included this five-level enhancement "to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors." U.S.S.G. § 4B1.5(b) cmt. background. Defendant's convictions for conspiring to sexually exploit four children multiple times after his prior conviction for aggravated sexual abuse of a minor points to a natural conclusion: he is a repeat and dangerous sex offender against minors. The Court should apply the five-level increase pursuant to U.S.S.G. § 4B1.5(b).

## IV.    THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The Court "in the course of selecting an appropriate sentence, ought to give respectful attention to Congress' view that crimes such as [defendant's] are serious offenses deserving serious sanctions." *United States v. Grigg*, 442 F.3d 560, 564–65 (7th Cir. 2006) (discussing possession of child pornography). No circumstances genuinely justify departure or variance from the Guidelines. Defendant's sentence must provide an accurate accounting of his repeated and deliberate sexual exploitation of prepubescent children. A sentence of 50 years imprisonment is necessary, appropriate, and no harsher than necessary to accomplish the aims set forth in 18 U.S.C. § 3553(a).

8

A. <u>**The Nature and Circumstances of the Offenses**</u>

The nature and circumstances of defendant's crimes are troubling and merit substantial punishment. Evidence presented at trial shows that defendant essentially cold-called his co-conspirators so that he could ask them for images depicting the genitals of infants and young children in exchange for money. Defendant began by misrepresenting his identity as a woman in her late twenties to lower his co-conspirators' inhibitions. He then initiated conversations with his co-conspirators by offering them an opportunity to make $2,000 but did not immediately specify what they would have to do to receive payment. Defendant sent messages calculated to introduce sexual overtones into the conversations while he persistently referenced his ability to pay them large amounts of money.

Once he learned that his co-conspirators were in need of money and willing to discuss sexually explicit topics, defendant informed them that they would have to produce and send him images depicting the genitals of infants and young children if they wished to receive money. During these chats, defendant distributed child pornography to his co-conspirators to normalize the acts he asked them commit. Records of defendant's chats with these women show their reluctance to meet defendant's demands. These chats also show defendant's persistence in persuading them to produce and send the images he requested.

Undeterred, defendant leveraged the economic hardships of these women to convince them to engage in acts they were not predisposed to commit. For example, defendant shamelessly offered Jasmine Stanley money in exchange for images of a

9

one-year-old child's genitals the day after learning that she was experiencing homelessness. After receiving the images he requested, defendant threatened to "expose" his co-conspirators for their crimes. During his interview with FBI agents, defendant stated that he asked one of his co-conspirators to produce an image of an infant's penis so that he "could have something to hold over her head." Defendant never paid his co-conspirators the money he promised. Instead, defendant's co-conspirators eventually found themselves indicted for crimes they may well have not committed had defendant never targeted them.

Now, the lives of defendant's co-conspirators are irreversibly changed. Jasmine Stanley is scheduled to plead guilty for producing child pornography. Dominique Harper pleaded guilty to transportation of child pornography and her four children will go through a substantial portion of their childhood with their mother in prison. Sadly, Kelsie Gauler's children will live the rest of their lives without their mother after she committed suicide while awaiting trial in this case. Defendant has left unspeakable ruin in his wake, all so that he could obtain pictures of children's genitals and attempt to blackmail women he barely knew. The Court should give significant weight to the nature and circumstances of defendant's crimes in crafting his sentence.

B.     **Defendant's History and Characteristics Do Not Merit a Lenient Sentence**

Defendant is physically healthy, appropriately socialized, is not dependent on drugs or alcohol, and does not suffer from any psychological condition. Defendant's history and characteristics do not justify lenient treatment at sentencing.

While defendant's upbringing was not charmed and did not accord him any special advantages over his peers, he did not live in a childhood home devoid of emotional support. During his early childhood, he lived with his grandparents in a gated community and described living with them as "nice." PSR ¶92. When he was 13, he moved in with his aunt and described his experience living with her as "good." PSR ¶92. Defendant attended school regularly and graduated high school at the age of 18. PSR ¶¶105-106.

Defendant suffered injuries as a very young child after someone put him in a scalding bath, and he then went to live with his grandparents. Otherwise, Defendant described an upbringing that was generally free from abuse, violence, or drug problems and equipped him with the basic social skills necessary to participate in society and abstain from illegal conduct. Nothing in defendant's history justifies a variance from the Guidelines.

C.   **A Sentence Below the Guidelines Fails to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

Defendant's crimes are undisputedly serious offenses. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). Courts regularly hand down severe sentences for the sexual exploitation of children. *See, e.g.*, *United States v. Noel*, 581 F.3d 490, 492–93, 500–01 (7th Cir. 2009) (80-year sentence reasonable for producing child pornography where defendant did not molest victim); *United States v. Chapman*, 694 F.3d 908, 915–16 (7th Cir. 2012) (40-year sentence reasonable for 46-year-old defendant who produced child pornography).

Defendant's offenses are all the more serious considering his prior conviction for the aggravated sexual abuse of a minor. Defendant finds himself in the minority of production offenders, where only "one-in-ten (10.9%) had a prior conviction for a contact sex offense against a child." U.S. Sentencing Commission, Federal Sentencing of Child Pornography: Production Offenses 41 (2021). Offenders like defendant receive "markedly longer average sentences (334 months []) than those offenders with no history of such conduct." *Id*. at 51.

Defendant's prior conviction and his possession of a weapon after being convicted of a felony also show that he has little respect for the law. Defendant chose to conspire with multiple women to sexually exploit at least four young children after having been previously convicted for a contact sex offense against a minor. In his

12

chats, defendant acknowledged that he was asking his co-conspirators to commit serious crimes.

Defendant's possession of a firearm he purchased under dubious circumstances further demonstrates that he has little regard for the law. A lengthy sentence is necessary to foster in defendant an honest respect for the law. A sentence of 50 years imprisonment serves as just and necessary punishment.

## D.  A Lengthy Sentence is Necessary to Deter Similar Criminal Conduct and to Protect the Public from Defendant

The Court should craft defendant's sentence to protect the public and to afford adequate deterrence to like-minded criminals. Congress, the Supreme Court, and the Sentencing Commission find general deterrence[7] to be an important factor when considering an appropriate sentence. *See*, *e.g.*, *United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007) ("The more difficult it is for a person to resist a desire for sexual contact with children, the more likely he is to recidivate, and this is an argument for a longer prison sentence. And on grounds of deterrence as well as incapacitation, for the stronger the impulse to commit a criminal act, the greater must be the threat of punishment in order to deter it."); *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been

---

[7] The Sixth Circuit in part reversed a district court when the district court failed to see any importance in general deterrence. *See United States v. Bistline*, 665 F.3d 758,767 (6th Cir. 2012). The district court stated, "general deterrence ... will have little [if] anything to do with this particular case." *Id*. The Sixth Circuit found the district court's statement was "inexplicable, and in any event conflicts with our statement that general deterrence is crucial in the child pornography context[.]" *Id*. (internal citation and quotations omitted).

given significant weight at sentencing[.]"); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("The greater concern under the Guidelines is for the welfare of these exploited children."). Defendant has shown that a previous conviction is not sufficient to deter him from committing further crimes involving the sexual exploitation of children. A sentence of 50 years imprisonment is the best assurance that defendant will not sexually exploit children in the future.

## CONCLUSION

For the reasons stated above, the government recommends that the Court sentence defendant Lorenzo Johnson to 50 years imprisonment followed by a lifetime of supervised release.

Respectfully submitted,

CLIFFORD D. JOHNSON
UNITED STATES ATTORNEY

By: */s/ Eduardo A. Palomo*
Eduardo A. Palomo
Trial Attorney
U.S. Department of Justice
1301 New York Ave NW
Washington, D.C. 20005
(202) 579-5738
Eduardo.palomo2@usdoj.gov

*/s/ Molly Kelley*
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500